WEST HELENA CONSOL. CO. v. McCRAY.*

McCRAY v. WEST HELENA CONSOL. CO.

(Circuit Court of Appeals, Eighth Circuit.    March 12, 1919.)

Nos. 5203, 5211.

1. APPEAL AND ERROR ☞1039(8)—HARMLESS ERROR—RULINGS ON PLEADINGS —MOTION TO MAKE DEFINITE.

Error in denying the motion to make the allegations of negligence in the complaint more definite does not require reversal, where there was no claim that the defendant was surprised at the trial, or unprepared to meet the plaintiff's case, and depositions had been taken, which indicated the acts of negligence relied on.

2. STREET RAILROADS ☞114(9)—COLLISION WITH AUTOMOBILE—EVIDENCE— NEGLIGENCE OF MOTORMAN.

Evidence *held* not to warrant a finding that motorman was negligent; it appearing that he had his car under full control when an automobile, which had been running parallel to the car tracks, without warning turned across them in front of the car and was struck.

3. STREET RAILROADS ☞90(5)—COLLISION WITH AUTOMOBILE—NEGLIGENCE.

Where automobile attempted to cross street car tracks when car was so near that, though motorman had it under control, he could not stop in time to prevent collision, street car company was not negligent.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by Lora McCray against the West Helena Consolidated Company. Judgment for plaintiff, and defendant brings error, and plaintiff also brings error, from the order refusing a new trial, if plaintiff should remit $4,000 from the verdict. Judgment reversed, and new trial ordered, and plaintiff's writ of error dismissed.

W. E. Hemingway, of Little Rock, Ark. (Edwin Bevens and Leo J. Mundt, both of Helena, Ark., and G. B. Rose, D. H. Cantrell, and J. F. Loughborough, all of Little Rock, Ark., on the brief), for plaintiff in error.

C. P. Harnwell, of Little Rock, Ark., for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

CARLAND, Circuit Judge. The defendant in error, hereinafter called plaintiff, sued the railway company and one Prewett to recover damages for personal injuries alleged to have been caused by their negligence. The cause of action arose out of a collision between a car of the railway company and an automobile owned and driven by Prewett at the intersection of Porter and Franklin streets in the city of Helena, Ark. The plaintiff, in stating her only ground of negligence, alleged that the collision would not have occurred, had it not been for the gross negligence of Prewett and the railway company in operating the car and automobile.

The railway company filed a motion for an order requiring the plaintiff to make her complaint more definite and certain, by stating

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

256 F.—48    *Certiorari denied 249 U. S. —, 39 Sup. Ct. 494, 63 L. Ed. —.

in what respect the car was negligently operated. This motion was denied, and such ruling is assigned as error. The exercise of a sound discretion would, we think, have required that the motion be granted. Kirby's Dig. §§ 6091, 6147; Little Rock Ry., etc., v. Smith, 66 Ark. 278, 50 S. W. 502; Chicago Ry. v. Smith, 94 Ark. 524, 127 S. W. 715; New York, etc., v. Kistler, 66 Ohio St. 326, 64 N. E. 130.

[1] The plaintiff charged generally that the railway company was negligent in the operation of its car. It was in fairness entitled to know in what respect the car was negligently operated. We are led to believe, however, from an examination of the record, that the railway company was not prejudiced by the denial of its motion. There is no claim or showing that the railway company was surprised at the trial or unprepared to meet the case of the plaintiff. Moreover, it appears that certain depositions had been taken bv the plaintiff in the case before the motion was made, and the defendant railway company undoubtedly knew substantially what the claim of the plaintiff was. We therefore refuse to reverse for the error in denying the motion, but deem it proper to say that we may not always be able to act in a similar way in other cases. The motion, if renewed, should be granted.

[2] After issue joined, the case was tried and a verdict returned for the plaintiff against the railway company and in favor of Prewett against the plaintiff. Judgment having been entered upon the verdict, the railway company brings the case here, assigning error. At the close of the evidence the railway company moved the court for a directed verdict in its favor. The motion was denied, and this ruling is assigned as error. The evidence shows substantially the following facts:

Porter street, above mentioned, runs in an east and west direction; Franklin street runs north and south, and intersects Porter street; on the morning of November 13, 1915, at about 7:20 o'clock a. m., the plaintiff was at the house of Mrs. Summers, which is located on the north side of Porter street about 43 feet east of the east line of Franklin street, where it intersects Porter street, and about 75 feet from the center of Franklin street; the railway company's street car line extends along Porter street in front of the house mentioned, and crosses Franklin street at the above-mentioned intersection.

On the morning in question the plaintiff and two other ladies, Miss Venable and Miss Kerr, being desirous of going to the Iron Mountain depot, for the purpose of taking a train for Little Rock, procured the service of Prewett to take them to the depot in an automobile. The automobile reported at the house with the front thereof facing west. The plaintiff seated herself on the back seat of the automobile, on the left side thereof. The other two ladies above mentioned occupied the remainder of the seat to the right. This situation placed the plaintiff next to the street car track. Porter street was of sufficient width to allow the street car and automobile to move along the same together in safety.

Without delay, after the above-named passengers were seated, the automobile was driven west by Prewett. He testified that he drove to

the west side of the intersection of Porter and Franklin streets and turned south across the track of the railway company, and that, as he got very nearly off the street car track, a street car of the railway company going west struck the automobile on the rear fender, on the east side, right over the axle of the rear wheel. The evidence shows that at this collision the plaintiff, being seated as stated, was struck by the car and seriously injured. Prewett further testified that, after the collision, he turned the automobile to the north and subsequently drove it to the stable; that the car was not injured, except the fender was bent; that none of the occupants of the automobile were injured, except the plaintiff; that the automobile was not overthrown, but simply skidded around; that he did not stop, look, or listen for a car, before he started to cross the track, nor did he put his hand out or give any signal that he was about to do so.

All the occupants of the automobile, including Prewett, testified that they saw no street car approaching from the east when they got into the automobile, and saw no street car until the automobile was struck. The undisputed evidence shows that there was an unobstructed clear view from the Summers house, east on Porter street, for three squares, from which direction the street car came. The plaintiff and Miss Venable testified that the curtains on the automobile were up, Miss Kerr that they were on, and the motorman said that they were up—closed. The occupants of the automobile also testified that they heard no gong sounded by the motorman on the street car prior to the accident.

Miss Coward, a witness for the plaintiff, testified that on the morning in question she said good-bye to the girls as they were getting into the automobile, and then proceeded to cross Porter street to the south; that when she had gotten probably 40 feet from the curb where the automobile was standing, she hard the crash of the collision; that she did not see the collision, as her back was turned to the automobile and the street car. She also testified that the motorman did not ring his gong, that she did not notice the street car when it passed her, and did not know that it had passed until she heard the crash of the collision; then she thought how narrowly it had missed her.

Mr. Kelley, a witness for defendant, was a passenger on the street car that collided with the automobile. He testified that there was a trailer attached to the car in which he was seated, that he first saw the automobile about 20 feet before it was struck, traveling directly west, sort of in a circle like, as if it were making a swing in front of the street car crossing the track; that the automobile was not more than 6 or 8 feet from the car when it started across the track; that the motorman was ringing his gong three-fourths of the way across the block.

Mrs. Grace Peacor, a witness for the defendant, testified that she was standing a block west of the intersection of Porter and Franklin, on Porter street, when the collision occurred, and saw it. She was waiting for the street car. She first saw the street car about a block east of the intersection. She heard the gong ring, and supposed it was for a woman who was crossing the street, and who seemed to take no

notice of the car; that the automobile was going at a fair speed, and when it got to the west side of the intersection, it turned rather abruptly, and it looked like it would be a narrow escape. The turn of the automobile was made rather quickly.

The motorman testified that, when he first saw the automobile, it was standing in front of the house of Mrs. Summers. The street car at that time was a block away or more. At this time he saw a lady crossing Porter street. He rang the bell for her, and saw the passengers getting into the automobile. They started up just before he got even with them. When he noticed the car start up, he continued to ring the gong until the automobile cut short across the street. The automobile gave no signal or sign of any kind that it was about to cross the track. When the automobile turned across the track, he reversed the motor and applied the emergency brakes. The rails were slick, and the reverse did not have any effect on it much. The street car and possibly the trailer cleared Franklin street before coming to a full stop. Other testimony showed that it had rained during the previous night, and there was a light rain falling on the morning in question. The motorman further testified that the automobile and street car could travel together upon Porter street in safety; that the automobile was small, and before it started to cross the track was in a place of safety; that he tried his best to stop his car after he saw the automobile start to cross the track.

The facts being as stated, was there substantial evidence to support a verdict against the railway company, based upon negligence in operating the car? So far as the speed of the car is concerned, all the witnesses, except Miss Coward, that testified upon the subject, either testified that the car was moving at a rate of 8 or 9 miles per hour, or that it was moving at ordinary speed. It is urged that the fact that the car and the trailer cleared Franklin Street after the collision indicated excessive speed. We do not think so, as Franklin street, according to the evidence, was 64 feet in width and the collision occurred on the west side thereof, and upon this point we must take into consideration that the automobile was not overturned or injured, except that the fender was bent.

The witness Coward was asked the following question:

"Do you know at what rate of speed the street car was going?"

Answer:

"I don't know the rate, but it must have been running very fast in order to have struck the taxicab 40 or 50 feet east of me after passing me."

This testimony has no probative value, because it was a mere guess, based upon an assumption that was not true in fact. Moreover, she did not know that the car had passed her, as she testified, until she heard the crash of the collision. There is in our judgment no conflict in the evidence as to the speed of the car, and the evidence is to the effect that it was either ordinary speed or 8 or 9 miles an hour; in fact, the trial court so stated in the presence of the jury.

As to the ringing of the gong, no witness testified that it was not rung, except Miss Coward, who, as before stated, did not even know

that the car had passed her. There was abundant testimony that the gong was rung. The occupants of the car say they did not hear the gong, but they also say that they did not hear or see the car, although it must be taken as true, by reason of the physical facts, that the car was traveling almost right beside the automobile. This is not a case where an automobile was proceeding on Franklin street, at right angles with the car, but it is where an automobile was traveling on Porter street, in the same direction as the street car, and they were so near together that a small Ford automobile could not turn and cross the track without being hit by the street car. Such being the physical facts, we doubt very much whether the ringing of the gong would have changed the situation.

[3] The trial court charged the jury as follows:

"Seeing a man in a vehicle about to cross the tracks or driving along the tracks, the motorman may assume that he will turn aside out of the way of the cars, or not attempt to cross in front of them, when the car is so near as to indicate the danger of a collision. * * *

"Now, gentlemen of the jury, it is for you to determine, first, could the accident have been prevented if the street car motorman had exercised ordinary diligence, as I explained to you the law requires? If he could, and didn't do it, then, gentlemen of the jury, the street car company is liable, and your verdict should be against it.

"If, on the other hand, this automobile attempted to cross the tracks, and got on there, when the car was so near that, although he had it under control, he could not stop it in time to prevent the collision, then, gentlemen of the jury, the company was not guilty of any negligence, and it is not liable, and your verdict should be for the street railway company."

Of course, the assumption that the motorman may indulge in, as above stated, does not give him the right to proceed without using ordinary care with reference to the conditions that surround him. He should have his car under such control that he may use all the appliances at hand to stop his car, if he discovers that his assumption is wrong; but this requirement of having his car under control and using ordinary care to insure the safety of the vehicle does not require the motorman to insure the safety of the vehicle in any event, for that requirement would destroy the assumption in which he has a right to indulge, and require him to stop his car and wait until he was certain what the vehicle would do. The court stated the law correctly, as we understand it, in the excerpt from its charge last above quoted. The only testimony as to what the motorman did, after he discovered the automobile was about to cross the track, is the testimony of the motorman himself, and that testimony, in our opinion, would not support a verdict against the railway company.

Briefly stated the case is this: The street car and the automobile were traveling in the same direction on Porter street, so near together that the automobile could not cross the street car track in front of the car without being struck. The automobile abruptly or suddenly, without any warning, turns to cross the track in front of the car, and when the motorman saw what the driver of the automobile was about to do, he, so far as the evidence shows, did all that he could to stop his car. This, in our judgment, does not show negligence in the operation of the car.

In our opinion, the motion for a directed verdict in favor of the defendant railway company ought to have been granted and for the error in not so ruling the judgment below must be reversed, and a new trial ordered. Other errors are assigned which we do not find it necessary to consider.

The writ of error sued out by the plaintiff (case No. 5211) from the order refusing to grant a new trial, if the plaintiff should remit the sum of $4,000 from the verdict, is dismissed.